# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### ORLANDO DIVISION

**WENDELL LOOS,**

**Plaintiff,**

-vs-                                                        **Case No.  6:05-cv-1119-Orl-22DAB**

**JO ANNE B. BARNHART, Commissioner**
**of Social Security,**

**Defendant.**

_____

# REPORT AND RECOMMENDATION

## TO THE UNITED STATES DISTRICT COURT

The Plaintiff brings this social security appeal pursuant to the Social Security Act (the Act),

as amended, Title 42 United States Code Section 405(g), to obtain judicial review of a final decision

of the Commissioner of the Social Security Administration (the Commissioner) denying his claim for

Disability Insurance Benefits (DIB) and Supplemental Security Income (SSI) benefits under the Act.

The record has been reviewed, including a transcript of the proceedings before the

Administrative Law Judge (ALJ), the exhibits filed and the administrative record, and the pleadings

and memoranda submitted by the parties in this case.  Oral argument has not been requested.

For the reasons that follow, it is respectfully **RECOMMENDED** that the decision of the

Commissioner be **AFFIRMED.**

## I. BACKGROUND

### A.    Procedural History

Plaintiff filed for a period of disability, DIB and SSI benefits on October 26,2000.  R. 68-70,

153-60.  He alleged an onset of disability on December 1, 1999, due to a left arm injury, lower back

pain, sciatica in both legs, bad knees and a heart attack in 1986.  R. 82.  His application was denied

initially and upon reconsideration.  R. 56.  Plaintiff requested a hearing, which was held on April 23,

2002, before Administrative Law Judge Philemina M. Jones (hereinafter referred to as "ALJ").  R.

26-49.  In a decision dated May 30, 2002, the ALJ found Plaintiff not disabled as defined under the

Act through the date of her decision.  R. 8-17.  Plaintiff timely filed a Request for Review of the

ALJ's decision and the Appeals Council denied Plaintiff's request on August 23, 2002.  R. 4-5.

Plaintiff sought judicial review in Case No. 6:02cv1218-Orl-28DAB.

The Court granted the Commissioner's Motion to Remand, and entered judgment on August

22, 2003.  R. 185-88.  The Appeals Council vacated the May 30, 2002 decision and remanded the case

to the ALJ on September 26, 2003.  R. 190-92.  On remand, the ALJ was instructed to grant Plaintiff

a new hearing, analyze and develop the issue of Plaintiff's former work, seek records from James J.

Macool, M.D., and the Spinal Center in Tampa, address the opinion of disability from the Florida

Department of Education, and determine if noncompliance with prescribed treatment was a basis for

disallowance and whether it would have made a difference in Plaintiff's condition if he had followed

treatment (R. 164-65).  In accordance with the AC remand, the ALJ subpoenaed medical records from

Dr. Macool (R. 328), obtained a consultative orthopedic examination by James P. Ryan, M.D., dated

March 17, 2004, which was accompanied by a medical source assessment (R. 307-13), and evaluated

additional related medical evidence (R. 233-306, 314-37, 329-59).  A supplemental hearing was held

September 20, 2004 (R. 387-420).  In an April 15, 2005, decision, the ALJ again found Plaintiff not

disabled. R. 164-73.

### B.    Medical History and Findings Summary

Plaintiff's medical history is set forth in detail in the ALJ's decision.  Plaintiff was 47 years

old as of December 1, 1999, the alleged onset date; 49 years old as of June 30, 2001, the date last

insured; and 52 years old at the time of the final decision by the ALJ on April 15, 2005. R. 68-70, 153-60, 197. Plaintiff has a high school equivalent education and past relevant work experience as a carpenter, produce manager, insurance agent, and telemarketer.  R. 83, 229-31.  By way of summary, Plaintiff complained of injuries to his left arm, lower back, sciatica in both legs, bad knees, and a 1986 heart attack.  R. 82.  After reviewing Plaintiff's medical records and Plaintiff's testimony, the ALJ found that Plaintiff suffered from degenerative disc disease, degenerative joint disease of the knees, and a healed fracture of the left arm, which were "severe" medically determinable impairments, but not impairments severe enough to meet or medically equal one of the impairments listed in Appendix 1, Subpart P, Regulations No. 4.  R. 170.  The ALJ determined that Plaintiff retained the residual functional capacity (RFC) to perform light work, as he could lift ten pounds frequently and twenty-five pounds occasionally, stand and walk two hours during an eight hour workday, with no limitations on sitting, and occasionally climb, balance, crouch, and stoop, but never kneel or crawl. R. 164-73.

In making this determination, the ALJ found that Plaintiff's allegations regarding his limitations were not totally credible for the reasons set forth in the body of the decision.[1]  R.170. Based upon Plaintiff's RFC and the testimony of a Vocational Expert ("VE"), the ALJ determined that he could perform past relevant work as a telemarketer.  R. 173, Finding 7.  Accordingly, the ALJ determined that Plaintiff was not under a disability, as defined in the Act, at any time through the date of her April 15, 2005 decision.  R. 173, Finding 9.

Plaintiff now asserts four points of error.  First, he argues that the ALJ erred by finding that Plaintiff's past work as a telemarketer met the standard for substantial gainful activity.  Second,

---

[1]  Within the body of the decision, the ALJ discredited Plaintiff's reported limitations based on several specific inconsistencies between those limits and the medical findings.  R. 170.

Plaintiff contends that the ALJ erred by relying on the consultative examination from March 2004, when date of last insured for DIB was in 2002.  Third, Plaintiff contends that the ALJ erred by ignoring his manipulative limitations, which would preclude performance of the full range of sedentary and light work.  Fourth, Plaintiff contends that the ALJ erred in disregarding Plaintiff's subjective complaints due to his lack of treatment when he lacked the funds to obtain treatment.  All issues are addressed, although not in the order presented by Plaintiff.  For the reasons that follow, it is respectfully **RECOMMENDED** that the decision of the Commissioner be **AFFIRMED.**

## II.  STANDARD OF REVIEW

The scope of this Court's review is limited to determining whether the ALJ applied the correct legal standards, *McRoberts v. Bowen*, 841 F.2d 1077, 1080 (11th Cir. 1988), and whether the findings are supported by substantial evidence, *Richardson v. Perales*, 402 U.S. 389, 390 (1971).  The Commissioner's findings of fact are conclusive if supported by substantial evidence.  42 U.S.C. § 405(g).  Substantial evidence is more than a scintilla – *i.e.,* the evidence must do more than merely create a suspicion of the existence of a fact, and must include such relevant evidence as a reasonable person would accept as adequate to support the conclusion.  *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995) (citing *Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982) and *Richardson*, 402 U.S. at 401).

"If the Commissioner's decision is supported by substantial evidence, this Court must affirm, even if the proof preponderates against it." *Phillips v. Barnhart*, 357 F.3d 1232, 1240 n.8 (11th Cir. 2004).  "We may not decide facts anew, reweigh the evidence, or substitute our judgment for that of the [Commissioner.]" *Id.* (internal quotation and citation omitted); *Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005).  The district court must view the evidence as a whole, taking into account

-4-

evidence favorable as well as unfavorable to the decision.  *Foote*, 67 F.3d at 1560; *accord, Lowery v. Sullivan*, 979 F.2d 835, 837 (11th Cir. 1992) (court must scrutinize the entire record to determine reasonableness of factual findings).

The ALJ must follow five steps in evaluating a claim of disability.  *See* 20 C.F.R. §§ 404.1520, 416.920.  First, if a claimant is working at a substantial gainful activity, she is not disabled.  29 C.F.R. § 404.1520(b).  Second, if a claimant does not have any impairment or combination of impairments which significantly limit her physical or mental ability to do basic work activities, then she does not have a severe impairment and is not disabled.  20 C.F.R. § 404.1520(c).  Third, if a claimant's impairments meet or equal an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1, she is disabled.  20 C.F.R. § 404.1520(d).  Fourth, if a claimant's impairments do not prevent her from doing past relevant work, she is not disabled.  20 C.F.R. § 404.1520(e).  Fifth, if a claimant's impairments (considering her residual functional capacity, age, education, and past work) prevent her from doing other work that exists in the national economy, then she is disabled.  20 C.F.R. § 404.1520(f).

### A.   RFC, past relevant work, and substantial gainful activity.

Plaintiff claims that the ALJ should not have found him able to perform light work in light of his manipulative limitations for reaching and handling documents.  Plaintiff also argues that the ALJ erred by finding that his past work as a telemarketer met the standard for substantial gainful activity.

Residual functional capacity is an assessment based on all relevant evidence of a claimant's remaining ability to do work despite her impairments.  20 C.F.R. § 404.1545(a); *Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997).  The focus of this assessment is on the doctor's evaluation of the claimant's condition and the medical consequences thereof.  *Id.*  Substantial weight must be given

-5-

to the opinion, diagnosis and medical evidence of a treating physician unless there is good cause to

do otherwise.  *See Lewis*, 125 F.3d at 1440; *Edwards*, 937 F.2d at 583; 20 C.F.R. §§ 404.1527(d),

416.927(d).  If a treating physician's opinion on the nature and severity of a claimant's impairments

is well-supported by medically acceptable clinical and laboratory diagnostic techniques, and is not

inconsistent with the other substantial evidence in the record, the ALJ must give it controlling weight.

20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2).  Where a treating physician has merely made conclusory

statements, the ALJ may afford them such weight as is supported by clinical or laboratory findings

and other consistent evidence of a claimant's impairments.  *See Wheeler v. Heckler*, 1075 (11th Cir.

1986); *see also Schnorr v. Bowen*, 816 F.2d 578, 582 (11th Cir. 1987).

     Plaintiff contends that the ALJ erred in finding that Plaintiff could perform his past work given

that the ALJ in the May 2002 decision, the ALJ found that Plaintiff would have limitations in the use

of his left arm in pushing and pulling movements.  R. 14.  In the April 2005 decision (following the

September 2004 rehearing), the ALJ did not find any manipulative limitations based on Dr. Ryan's

consultative examination report of March 2004.  R. 171.  Plaintiff contends that the ALJ failed to

recognize that Dr. Ryan's report was generated over two years after Plaintiff's date last insured for

DIB and should not have been considered for DIB purposes, although he does not deny it was relevant

to Plaintiff's condition for SSI purposes in 2004.  Plaintiff points to Social Security Ruling 85-15[2],

---

[2]Social Security Ruling 85-15 provides:

Reaching, handling, fingering and feeling require progressively finer usage of the upper extremities to perform work-related activities. Reaching (extending the hands and arms in any direction) and handling (seizing, holding, grasping, turning or otherwise working primarily with the whole hand or hands) are activities required in almost all jobs. Significant limitations of reaching or handling, therefore, may eliminate a large number of occupations a person could otherwise do. Varying degrees of limitations would have different effects, and the assistance of a VS may be needed to determine the effects of the limitations. "Fingering" involves picking, pinching, or otherwise working primarily with the fingers. It is needed to perform most unskilled sedentary jobs and to perform certain skilled and semiskilled jobs at all levels of exertion.

as stating that manipulative limitations would precluded the performance of the full range of sedentary and light work.

The Commissioner responds first that the AC vacated the prior May 30, 2002 decision on September 26, 2003, and remanded the case for a new decision (R. 190-192); thus, the April 15, 2005, decision is the final decision of the Commissioner.  In the April 2005 decision, the ALJ noted that Plaintiff fractured his upper left arm in 1974 (R. 171); however, as Plaintiff reported on November 16, 2000, he had had no medical evaluation or treatment since the injury occurred and x-rays revealed a healed fracture of the left humerus, with normal grip strength and normal ability in fine and gross manipulation of both hands as of May 2001, before the date of last insured for DIB purposes.  R. 171. The Commissioner was entitled to rely on Dr. Ryan's findings and opinions in finding a lack of manipulative limitations for SSI purposes.

Plaintiff's counsel asked the VE during the September 2004 hearing how manipulative limitations would impact Plaintiff's ability to perform his past work and the VE testified that limitations in reaching and handling where the individual could do it only one-third of the time, would negatively impact the past work. R. 413.  The VE testified that a one-third push/pull limitation would not affect any of the positions identified (including telemarketer), because "they don't really require pushing and pulling as it's defined."  R. 413.; *see also* R. 411 ("[H]e could perform past relevant work, the position of telemarketer.  That's a sedentary job, so, yes.").  The VE testified that limitations in terms of reaching and handling where the individual could only do it one-third of the time would "negatively" affect the jobs he had identified. R. 413.  Plaintiff's counsel chose not to follow up how such a limitation would affect the jobs.

As the Commissioner points out, Dr. Ryan found no manipulative limitations during his examination in March 2004. R. 307-09. The ALJ accorded significant weight to the consultative orthopedic examination and assessment provided by Dr. Ryan, as he had the opportunity to review the Plaintiff's treatment records. Dr. Ryan found Plaintiff's range of motion to be within normal limits for left and right shoulder, elbow, and wrist. R. 309. Dr. Ryan also found that there was no push or pull limitation, and Plaintiff was not limited in reaching or handling. R. 311.

Dr. Ryan's report supersedes and is more extensive than the records provided from the treating physicians, such as the three prescription pad sheets from Dr. Macool from February 1997, July 1998, and March 1999. R. 328. Despite the fact that they are in different handwriting, all three (annual) prescriptions say basically the same thing: "Patient has chronic lower back pain from herniated lumbar disc and is unable to work unless he has a referral to orthopedist and continuing physical therapy." R. 328. Dr. Macool's conclusory statements that Plaintiff could not work were not supported by any

objective medical documentation or any records whatsoever from his office, despite the ALJ's two subpoenas to his office seeking documents. R. 213-14, 328. Although Dr. Goll, Plaintiff's treating orthopedist, opined that Plaintiff was "unable to work" as of January 2001, his opinion is not supported by his treatment notes from November 2000. R. 111-16. Dr. Goll noted that Plaintiff was on no medication (R. 115), he had received no treatment from 1998 until he saw Dr. Goll in November 2000 (R. 116), and the x-rays showed only mild degenerative changes. R. 112-16. Dr. Goll noted that Plaintiff had intermittent short-term jobs over the years, and his last time worked was April 2000. R. 115. The ALJ also considered and properly rejected the opinion of the Florida Department of Education Vocational Rehabilitation Office, who informed Plaintiff on March 5, 2001,

-8-

that his disability was too severe to provide services. Although Vocational Rehabilitation did not indicate what evidence was relied on in reaching this conclusion, they were copied on Dr. Goll's report and Plaintiff testified that Vocational Rehabilitation had sent him to see a doctor.  The ALJ properly rejected the conclusions of Dr. Goll and Vocational Rehabilitation that Plaintiff was unable to work.  R. 172.

Plaintiff contends that the ALJ erred in finding Plaintiff could perform his past relevant work as a telemarketer due to a lack of evidence that it was substantial gainful activity.  The ALJ found that during 1995, Plaintiff worked as a telemarketer and earned $4,952.00.  R. 172.  Because Plaintiff was very vague at the hearing and in his filings with the SSA about his work history, the ALJ had to piece together Plaintiff's earnings record and information from Plaintiff's attorney about his work history. R. 172.  In order for the ALJ to find that Plaintiff could perform his past relevant work, the past work must meet the following criteria:  1) the work was performed in the prior 15 years; 2) the work lasted long enough for the claimant to learn to do it; and 3) the work was substantial gainful activity. *Terrel v. Apfel*, 147 F.3d 659, 661 (8th Cir. 1998) (citing 20 C.F.R. § 416.965(a)).  Substantial gainful activity is work activity that involves doing significant physical or mental activities, which may be substantial even if it is done on a part-time basis or if the claimant does less, gets paid less, or has less responsibility than when he or she worked before. *See* 20 C.F.R. §§ 404.1572, 416.972 (2005).

Plaintiff attempts to obscure the issue by pointing to his hearing testimony that he worked as a telemarketer for a very short period of time because he could not sit for too long, and that he worked for two companies for a period of two to three weeks in either 1987, 1989, or 1990. R. 408.  Plaintiff basically argues that the 1995 earnings record does not indicate that Plaintiff worked as a telemarketer

because the employer is not listed in the earnings report, citing R. 220.  The ALJ recognized the

paucity of Plaintiff's testimony and conducted research into Plaintiff's earnings at the SSA.

Because of Plaintiff's vague testimony at the hearing, on January 10, 2005, the ALJ sent a

letter to Plaintiff's attorney which stated:

> At his hearing on September 20, 2004, Mr. Loos was unable to provide detailed
> information concerning his past work history.  Documents obtained from Social
> Security Administration records, which have been added to the record as Exhibit 5D,
> indicate that he worked for Comfort Air Conditioning, Inc., 217 Altamonte Commerce
> Blvd, Altamonte Springs, Florida in 1995, where he earned $4952.00.  Mr. Loos did
> not mention working at Comfort Air Conditioning, Inc. during his testimony when
> questioned about his past employers.  When questioned specifically about his income
> in 1995, Mr. Loos indicated that he did not recall where he worked in 1995.
>
> Please have Mr. Loos provide information concerning what his job duties were at
> Comfort Air Conditioning and how long he worked for them.

R. 232.  Plaintiff's attorney responded:

> In response to your letter, the claimant worked at Comfort Air Conditioning for a short
> period of time as a telemarketer, which I believe he testified to at his September 20,
> 2004 hearing.  It was part time work offered to him through his friend that was a
> supervisor at the company.  He was not able to continue doing the work because he
> could not sit as required to do the job.

R. 231.  Based on this combined information from Plaintiff's attorney and Plaintiff's earning record,

the ALJ determined that Plaintiff worked as a telemarketer in 1995 and that he earned $4,952.00 in

that capacity.  R. 172.

The earnings record indicates that Plaintiff worked for two employers during all four quarters

in 1995.  R. 67, 198, 220.  The earnings query shows that in 1995, Plaintiff earned $4,952 for one

employer with Employer Identification Number 593123208, and $583 for a second employer with

Employer Identification Number 383110998, totaling $5,535.34.  R. 220.  While the identity of the

employer with each identification number is not part of the record, the ALJ clearly used the Employer

Identification Number to determine that Comfort Air Conditioning of Altamonte Springs was the employer from whom Plaintiff had earned $4,952 in 1995, as included in her letter to Plaintiff's counsel.  The ALJ properly rejected Plaintiff's testimony that he had only worked there "two or three weeks" since Plaintiff's testimony was extremely vague at the hearing and on SSA forms (R. 83) about his dates of employment, and his earnings record from 1984 to 2002 shows that he never reported earnings of more than $6,499, with – years before his alleged onset date – 1987, 1992 reporting zero earnings and 1996 reporting $329.  R. 67.  The Commissioner also points to Plaintiff's statement on an October 26, 2000 Disability Report, in which he acknowledged that he worked an eight hour workday five days a week as a telemarketer (without dates).  R. 83.  Even if his work as a telemarketer had been performed only on a part-time basis, the ALJ properly found that it was above the substantial gainful activity level, and fell within the required fifteen year time frame in which to be considered past relevant work.  R. 172.  The ALJ properly relied on the testimony of the VE to find that Plaintiff's past relevant work as a telemarketer was within his RFC.  R. 411-414.  Even assuming *arguendo* that Plaintiff could not perform his past relevant work as a telemarketer, the VE identified a significant number of other jobs in the economy that Plaintiff could perform.  R. 411-14.

> **B.**      **Pain and credibility.**

Plaintiff asserts that the ALJ erred in evaluating his pain due to degenerative disc disease, degenerative joint disease in both knees, and a healed fracture of the left arm.  He argues that the ALJ erred by finding his subjective complaints not credible.  He contends that the record demonstrates his credibility and that the ALJ failed to provide adequate and specific reasons for discrediting his complaints.

The ALJ referred specifically to the Eleventh Circuit's pain standard and she clearly was aware of the governing standards for evaluating subjective complaints because she cited the applicable regulations and Social Security Ruling ("SSR") 96-7p. R. 171; *see also Wilson v. Barnhart*, 284 F.3d 1219, 1225-26 (11th Cir. 2002) (per curiam) (ALJ properly applied the Eleventh Circuit pain standard even though he did not "cite or refer to the language of the three-part test" as "his findings and discussion indicate that the standard was applied").  The ALJ complied with those standards.

Having concluded that she had to make a credibility determination of Plaintiff's subjective complaints, the ALJ plainly recognized that she had to articulate a reasonable basis for her determination.  In that respect, the ALJ stated:

> The record documents that the claimant's primary problem is low back pain. However, while the claimant testified that he is in constant and severe back pain the evidence of record does not support the claimant's allegations. The record shows that the claimant has intermittent episodes in which his back pain flares-up, and during those times he seeks treatment. However, there are extended periods of time in which the claimant's back is apparently not symptomatic. For example, the record shows that the claimant sought treatment in February 1998 complaining of low back pain. His doctor recommended that the claimant undergo an MRI of the lumbar spine. However, the record suggests that the claimant's back symptoms improved as there is no record that the claimant followed through with the MRI or sought any further treatment for back problems for a period of almost two years. He had an orthopedic evaluation, including an MRI of the lumbar spine in November 2000. The MRI showed a disc herniation at L4-5 level and in January 2001 his orthopedist recommended surgery. However, through the date of the hearing that took place on April 23, 2002 the claimant had not opted for surgery. The record shows that the claimant did not seek further treatment for back problems until nearly a year later when he went to the emergency room on November 19, 2001 complaining of back pain. Thus, since the claimant's alleged onset date of December 1, 1999 the claimant has essentially had only two documented flare-ups of back pain occurring November 2000 to January 2001, and again in November 2001. Thus, the undersigned does not find credible the claimant's testimony of constant and severe back pain. The record suggests that for the most part the claimant is asymptomatic, and there is little reason to conclude that the claimant cannot perform at least light work activity with the possible exception of those periods (occurring about once per year) in which he has a flare-up.

The record does not support the claimant's testimony that he had a heart attack in 1986. He was hospitalized in April 1986 due to insecticide poisoning which caused several symptoms including some cardiac arrhythmias, which resolved with treatment. Subsequent records fail to show evidence of any significant cardiovascular problems.

In regard to the claimant's complaints of knee pain the records shows that when he was evaluated at the Atlantic Orthopedic Center in November 2000 the claimant stated that his knees began bothering him in 1999 but that he has had no medical evaluation or treatment for knee problems. X-rays showed some degenerative changes in both knees and it was recommended that the claimant consult with a knee specialist at the Center to discuss treatment options. The record fails to show that the claimant followed up. Subsequently there are not further complaints of knee problems in the record, with the exception of the consultative examination of May 11, 2001. However, the examination on that date revealed no evidence of swelling, redness or effusion and there was only minimal decreased range of motion of the knee joints. Accordingly, the undersigned does not find sufficient evidence that the claimant's knee condition would preclude the performance of light work activity.

R. 170.

Plaintiff contends that the ALJ also erred in disregarding Plaintiff's subjective complaints due to his lack of treatment when he lacked the funds to obtain treatment. The Commissioner contends that the ALJ did not find Plaintiff not disabled due to a failure to follow treatment, because the medical evidence, as discussed by the ALJ, indicates that his lack of treatment was due to the fact that his condition was not as severe as he alleged.

Where an ALJ decides not to credit a claimant's testimony about pain, the ALJ must articulate specific and adequate reasons for doing so, or the record must be obvious as to the credibility finding. *Jones v. Dep't of Health and Human Servs.*, 941 F.2d 1529, 1532 (11th Cir. 1991) (articulated reasons must be based on substantial evidence). A reviewing court will not disturb a clearly articulated credibility finding with substantial supporting evidence in the record. *Foote*, 67 F.3d at 1561-62; *Cannon v. Bowen*, 858 F.2d 1541, 1545 (11th Cir. 1988).

Here, the ALJ offered very specific reasons for discrediting Plaintiff's subjective complaints, including inconsistencies between Plaintiff's exaggerated testimony and the medical records and examination findings.  These are factors the ALJ is directed to consider.  20 C.F.R. §§ 404.1529; 416.929.   Additionally, when Plaintiff sought treatment for sleep apnea (which the ALJ found not to be a severe impairment - R. 170), he told his treating pulmonologist (by the third appointment) that he was "not going to have surgery, he is not going to have CPAP [mask] and furthermore that dying in his sleep is really a good way to go.  Furthermore he doesn't seem to be inclined to lose any weight."  R. 129 – November 2, 2001.   The ALJ's reasons are supported by substantial evidence.

## C.  Consultative Examination

Plaintiff contends that the ALJ erred by failing to order a mental health consultative examination, the ALJ has failed to fairly and fully develop the record.  It is true that the ALJ has a duty to fully and fairly develop the record.  *Welch v. Bowen*, 854 F.2d 436, 438 (11th Cir. 1988).  However, the ALJ is required to order additional medical tests and exams only when a claimant's medical sources do not give sufficient medical evidence about an impairment to determine whether the claimant is disabled.  20 C.F.R. § 416.917.  In fulfilling his duty to conduct a full and fair inquiry, the ALJ is not required to order a consultative examination unless the record establishes that such an examination is necessary to enable the ALJ to render an informed decision.  *Holladay v. Bowen*, 848 F.2d 1206, 1210 (11th Cir. 1988).

Plaintiff testified at the September 2004 hearing that he was depressed because of his medical condition. R. 400.  When asked directly by the ALJ whether he had gone to a publicly-funded mental health facility, Plaintiff testified that he had not gone to one because he "had a family to take care of" and he did not believe the publicly-funded facilities would accept him as a patient.  R. 403.  At the

conclusion of the hearing, Plaintiff's counsel requested that the ALJ obtain a consultative psychiatric examination "if [the ALJ] felt it was necessary."  R. 419.

The ALJ ultimately decided it was not necessary to send Plaintiff for a consultative psychiatric examination.  As the Commissioner correctly points out, the record does not show that Plaintiff ever complained of any mental health problems to any physician of record or in the Emergency Room, or that any physician referred Plaintiff to a mental health specialist or facility, or that he was functionally limited due to a mental impairment.  Plaintiff did not even describe symptoms of depression, other than to say that he was depressed because he has a "nine year old son and a disabled wife and [he is] doing what [he] can."  R. 400.  When asked if he was seeing anyone for depression, he gave a long answer about poor treatment he had received at the hospital:  "I haven't seen anyone at all except for the hospital and I don't go to that hospital anymore than what I do because every time I go to that hospital they want to argue, you know.  They want to argue because they think that, you know, that I'm there just to get their medicine.  And I know they do that with everybody, but, hey, I'm not there for the  – I'm there to get relief.  And I told them the last time, I asked them to check their records. . . . They don't take Medicaid."  R. 400.  Plaintiff's counsel elicited no testimony whatsoever about what symptoms Plaintiff might be suffering  from depression.  R. 399-400.  There was no evidence whatsoever of depression for which the ALJ would find a CE necessary.  Rather, depression was suggested as an afterthought by Plaintiff's counsel.  R. 399 ("Now, at today's hearing, it appears that you're depressed.").  The ALJ's decision not to order a consultative psychiatric examination was based on substantial evidence.

Failure to file written objections to the proposed findings and recommendations contained in this report within ten (10) days from the date of its filing shall bar an aggrieved party from attacking the factual findings on appeal.

Recommended in Orlando, Florida on July 11, 2006.

*David A. Baker*
DAVID A. BAKER
UNITED STATES MAGISTRATE JUDGE

Copies furnished to:

Presiding District Judge
Counsel of Record
Courtroom Deputy